## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 14-323-06 |
| | : | |
| RONELL WHITEHEAD | : | |

## MEMORANDUM ORDER

This 3rd day of November, 2015, upon consideration of Defendant Ronell Whitehead's

Motion to Preclude Lay Opinion or Expert Testimony and the Government's Response thereto, it

is **ORDERED** that Defendant's Motion is **DENIED**, subject to renewal at trial if a Government

witness exceeds the proper bounds of opinion testimony.

Defendant moves generally to preclude lay opinion or expert testimony in this matter.  He

argues that the structure, practices, and terminology of drug organizations are not beyond the

expected knowledge of an average juror, making expert testimony unnecessary and therefore

improper.  Although Mr. Whitehead concedes that certain types of expert testimony, including

the interpretation of alleged code words, are proper, he argues there is an inherent risk such

testimony will stray outside permissible bounds.  *See, e.g.*, *United States v. Mejia*, 545 F.3d 179,

191–93 (2d Cir. 2008) (identifying two ways in which an officer expert may exceed the proper

scope of his expertise relating to coded language: (1) testifying about the general meaning of

conversations, "beyond the interpretation of code words," and (2) interpreting "ambiguous slang

terms" based on knowledge gained through the specific case rather than by reference to the

" 'fixed meaning' of those terms 'either within the narcotics world or within [the] particular

conspiracy.' ") (internal citations omitted).  Defendant further avers that the jury is likely to give

undue weight to such expert testimony.  Finally, he theorizes that any lay opinion testimony

1

offered by the Government might in fact not arise from the witness' direct observations, and therefore fail to qualify under Fed. R. Evid. 701.  At the time this Motion was filed, the Government had not yet provided any report regarding expert testimony in this matter.  It has now done so in response, and my ruling is predicated upon the Government's description of the testimony it intends to present.

At trial, the Government intends to elicit both fact and expert testimony from Special Agent Randy Updegraff.  It has described the scope of Agent Updegraff's testimony as a narcotics expert and provided his *curriculum vitae*.  Specifically,  "Special Agent Updegraff  is expected to testify to various aspects of drug trafficking, including: coded language used by drug dealers and customers; the growth, packaging and pricing of various quantities of cocaine, crack cocaine, and heroin for distribution; and the 'tools of the trade' of drug traffickers, including the carrying of firearms."  Government's Opposition Brief to Defendant's Motion to Preclude Opinion Testimony.

In general, it "is well-established that government agents may testify to the meaning of coded drug language under Fed. R. Evid. 702. . . . [and] about the significance of certain conduct or methods of operation to the drug distribution business, as such testimony is often helpful in assisting the trier of fact understand the evidence."  *United States v. Watson*, 260 F.3d 301, 307 (3d Cir. 2001) (internal quotations and citations omitted); *see also* Fed. R. Evid. 702 advisory committee notes ("when a law enforcement agent testifies regarding the use of code words in a drug transaction . . . So long as the principles and methods are reliable and applied reliably to the facts of the case, this type of testimony should be admitted.").  In *U.S. v. Gibbs*, the Third Circuit squarely considered "the limits on a government agent's testimony about the meaning of coded drug conversations."  190 F.3d 188, 194 (3d Cir. 1999).  The *Gibbs* Court described the

2

permissible bounds of expert testimony on the meaning of coded drug language under Fed. R.

Evid. 702 as follows:

> Because the primary purpose of coded drug language is to conceal the meaning of
> the conversation from outsiders through deliberate obscurity, drug traffickers'
> jargon is a specialized body of knowledge and thus an appropriate subject for
> expert testimony.  Such testimony is relatively uncontroversial when it permits a
> government agent to explain the actual meanings of coded words—that is, when
> the agent acts as a translator of sorts. . . .  It was within the scope of [the Agent's]
> expertise to explain, for example, in specific contexts, that "jawn" meant
> "cocaine," that to "hit" someone meant to page them on a beeper, that "on post"
> meant "ready and waiting," and that a "quarter" meant $2,500.  It is a different
> matter when an agent testifies that, in light of the meanings he has attributed to
> certain conversations, a defendant has played a certain role in, or has certain
> knowledge about, a conspiracy or other offense.

*Id.* at 211–12 (3d Cir. 1999) (internal citations and explanatory parentheticals omitted).

    *Gibbs* further establishes that expert testimony "that ventures into areas in which the jury

needs no aid or illumination" should be excluded.  *Id.* at 212–13 (citing *United States v. Dicker,*

853 F.2d 1103, 1108–09 (3d Cir.1988) ("Although courts have construed the helpfulness

requirement of Fed. R. Evid. 701 and 702 to allow the interpretation by a witness of coded or

'code-like' conversations, they have held that the interpretation of clear conversations is not

helpful to the jury, and thus is not admissible under either rule.") and Fed. R. Evid. 702 advisory

committee notes (stating that whether the situation is a proper one for expert testimony "is to be

determined on the basis of assisting the trier")).  *See also United States v. Stevens,* 935 F.2d

1380, 1384 (3d Cir. 1991).

    Here, based on the Government's representations, Agent Updegraff's anticipated

testimony falls within the permissible bounds of expert testimony.  If Agent Updegraff's

testimony at any point crosses over into subject areas that do not assist the jury in understanding

the evidence, Defendant should renew his objection with specificity during trial.  Regarding any

concerns of prejudice under Fed. R. Evid. 403 or undue influence, I am confident that a forceful

and carefully crafted limiting instruction by the Court, whenever warranted, will adequately address the risks raised by Defendant.  Finally, there is no evidence currently before the Court that the Government intends to solicit lay opinion testimony that is not "rationally based on the witness's perception" as required by Fed. R. Evid. 701(a).  If, however, lay opinion testimony is offered by a Government witness without a proper foundation first being laid, Defendant will have the opportunity to object at trial.

           _/s/ Gerald Austin McHugh_____
              Gerald Austin McHugh
              United States District Court Judge