**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| | : | **No. 14-323-06** |
| **v.** | : | |
| | : | |
| **RONELL WHITEHEAD** | : | |
| | : | |

**J. McHUGH**                                                **January 20, 2016**

<u>**MEMORANDUM**</u>

  This case arises out of the indictments of a total of 40 Defendants charging a widespread

conspiracy to engage in narcotics trafficking and related offenses in the city of Chester,

Pennsylvania.  Trial of the first group of Defendants is imminent, which has led to supplemental

request for discovery from the Government.  Many of the Defendants in this case are currently in

the custody of the Federal Bureau of Prisons (BOP).  Defendant Ronell Whitehead (accurately)

believes that some of his Co-Defendants are now cooperating witnesses for the Government and

will testify on its behalf at trial.  Defendant has filed the present Motion to gain access to the

communications of possible cooperating witnesses, in the hopes of finding communications that

would either be exculpatory, or which could be used to impeach the testimony of the cooperating

witnesses.

  Defendant's Motion, brought pursuant to *Brady v. Maryland* and the Jencks Act, focuses

on the communications of two cooperating witnesses:  for purposes of this memorandum they

will be identified as "Witness One" and "Witness Two."  The Government received records of

Witness One's communications from the BOP as part of an investigation related to this case.  In

that investigation, the Government did in fact review those communications.  The Government

has also received records of Witness Two's communications from the BOP, as part of its pretrial preparation, but it has not to date reviewed any of those records, and formally communicated that it does not intend to do so.[1]

In most respects, proper resolution of the Motion is self-evident, but the particular posture of this case gives rise to a more subtle and difficult problem as to proper application of the Jencks Act. The Motion will be granted in part and denied in part, as follows.

I.      Defendant's request for full access to BOP records of both witnesses' communications

Defense counsel first seeks access to all BOP records for phone calls and emails for these Co-Defendants. He clarified at argument that he is not making the traditional request that the Government review the communications, and then produce a subset of materials it deems relevant. Rather, counsel   seeks global production of all of the emails and recordings in order to make his own determination of relevance. This request is easily denied. Broadly speaking, since *Brady v. Maryland*, a defendant is constitutionally entitled to material favorable evidence within the government's knowledge. 373 U.S. 83 (1963). Under the Jencks Act, a defendant is also entitled to prior statements by government witnesses that "relate to the subject matter of the testimony of the witness." 18 U.S.C. § 3500. Each doctrine only entitles a defendant to certain information: "favorable" evidence under *Brady,* and prior related statements under the Jencks Act. Neither *Brady* nor the Jencks Act entitles a Defendant to complete access to records in the Government's possession. The Supreme Court "has never held that the Constitution demands an open file policy." *Kyles v. Whitley*, 514 U.S. 419 (1995).

---

[1] After hearing argument, I convened a brief supplementary hearing on January 4, 2016 to confirm that the prosecution took possession of all of the materials for its own purposes, and not because the Defendant had made these discovery requests.

Both *Brady* and the Jencks Act entrust the Government with deciding which evidence might be helpful to its opponent. This is an unusual allocation of responsibility within an adversarial system, and in the eyes of the defense, not entirely fair.[2] *See United States v. Bagley*, 473 U.S. 667, 695–99 (1985) (Marshall, J., dissenting) (discussing the conflict inherent in a prosecutor's obligation to identify and disclose evidence that harms her case). It is nevertheless the law, and I will not order the Government to disclose all of the communications of these two cooperating witnesses.

II.     Defendant's request for communications of Witness One

The Government has agreed to turn over appropriate *Brady* and Jencks materials from the records it has received from the BOP. Accordingly, Defendant's request for these materials is moot.

III.     Defendant's request for communications of Witness Two

As noted above, the prosecution also has in its possession records of Witness Two's communications from the BOP but represents that it has neither reviewed them nor has any intention of doing so. The Government argues that because it has not reviewed these records, it has no obligation to review them simply for the purpose of finding *Brady* or Jencks Act materials to turn over to Defendant.

I agree that at least in the first instance, the Government has no *Brady* obligation to search these files for favorable material evidence. The Third Circuit reached the same conclusion under similar facts in *United States v. Merlino*, 349 F.3d 144 (3d Cir. 2003). In *Merlino*, the BOP had preserved call records of multiple defendants in response to the government's precautionary requests. *Id.* at 153. The BOP had even delivered a box of tape

---

[2] Defense counsel made clear at argument that he does not challenge the ethics or honesty of the prosecution, but argues that only counsel for the accused can comprehensibly evaluate the potential relevance of the information.

recordings relating to one co-defendant to a member of the prosecution's team, and the box was returned without review.  *Id.*  The Third Circuit explained that *Brady* requires prosecutors to disclose evidence of which a prosecutor has actual knowledge or "constructive possession."  *Id.* at 154.  Constructive possession "means that although a prosecutor has no actual knowledge, he should nevertheless have known that the material at issue was in existence."  *Id.*  *Brady* does not require prosecutors "to search unrelated files in his or her office to look for exculpatory material."  *Id.*  Nor does *Brady* require prosecutors to search records of other agencies, even if prosecutors could easily acquire those records for their own purposes.  The Court of Appeals reasoned that under the facts of that case, "the defense requests [for BOP call records] would have sent the prosecution on an open-ended fishing expedition, nothing more and nothing less." *Id.*  Here, Defendant is asking the Court to order the Government on the same fishing expedition through un-reviewed BOP communication records that the Third Circuit rejected in *Merlino*.  I cannot accede to this request.

Whether the defense is entitled to related prior statements by witnesses under the Jencks Act is more complex.   In *Merlino*, the Third Circuit declined to order Jencks production based upon its statutory construction of the phrase "in the possession of the United States."  18 U.S.C. § 3500(b).  Consistent with other courts, the *Merlino* court declined to consider the United States government a monolithic entity, and concluded that the Jencks Act applies only to statements "possessed by the prosecutorial arm of the federal government."  349 F. 3d at 155.  The BOP "was not at all involved in either the investigation or the prosecution of the defendants,"[3] and the district court specifically found that the prosecution took delivery of the materials from the BOP

---

[3] This does not rule out discovery where various agencies are cooperating in an investigation. *See e.g. United States v. Bin Laden*, 397  F. Supp. 2d 465, 491 (S.D.N.Y. 2005) (holding that a U.S. Marshalls Witness Security Team was part of the prosecution team when recording interviews, and the recordings were Jencks Act materials).

solely because of the defendants' discovery requests.  *Id.* at 154.  The Court held that documents in the possession of the BOP, a separate governmental entity, could not be deemed to be in the possession of the prosecution, and were therefore not subject to Jencks production.

 The facts in *Merlino* are somewhat confounding, and complicate the analysis here, because the prosecution there initially acceded to a defense request to preserve and produce the records.  It issued subpoenas to the BOP, accepted and reviewed one batch of records, and made production upon the defendants, but then reversed course, returning a second batch without review, and objected to any further production.

Two important facts distinguish this case from *Merlino*.  First, as the Court took pains to clarify with a supplemental hearing, the prosecution here did not take possession of Witness Two's records here because of a defense discovery request, but for its own purposes.  It specifically requested the materials from the BOP in pursuit of this case, not by issuance of a subpoena as in *Merlino*, but with the consent of the witness' counsel and the ready acquiesence of the Bureau.   Although it now appears to have reconsidered whether gathering the records might have triggered an obligation that would otherwise not exist, there is no question that it specifically took possession in pursuit of prosecutorial objectives:  "In August 2015, the prosecution obtained from the BOP emails, phone calls, and other prison records of defendant Witness Two in case these materials contained inculpatory evidence should defendant Witness Two proceed to trial.  The prosecution never reviewed these materials."  Gov't Resp. Mot. Compel at 6 n.2.  The Government may have changed its mind, but the very same reasons motivating it to gather the records in the first instance underscores their potential importance for the defense.

Second, unlike the BOP call records at issue in *Merlino*, the records here are "in the possession of" the prosecution, even if the prosecution now deems it strategically advantageous not to review them.  There is no doubt that emails directly from Witness Two and transcripts of his conversations would qualify as statements under the Jencks Act.[4]  The statute on its face does not incorporate any limiting principle such as *Brady*'s actual or constructive knowledge criteria, and I do not read *Merlino* as creating such a standard.   *Merlino* must be analyzed in light of the unusual posture in which the case reached the appellate court, with the Government reversing course part way into a discovery process it  voluntarily undertook.  In that regard, on one level *Merlino* can be read as an expression of reluctance to penalize the Government for taking affirmative steps to provide the defendants with more discovery than would be required under the law.

 Lacking any appellate limitation on the scope of the Act, I am guided by the Supreme Court's admonition that "[t]he plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.' "  *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242 (1989) (citing *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982)). Resorting to the lowest common denominator of linguistic interpretation, Merriam-Webster defines "possession" as "control or occupancy of property without regard to ownership."

---

[4] 18 U.S.C. Sect. 3500 defines statement as follows:

(e) The term "statement", as used in subsections (b), (c), and (d) of this section in relation to any witness called by the United States, means—

 (1)  a written statement made by said witness and signed or otherwise adopted or approved by him;

 (2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or ….

WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 918 (1998).   Looking to an arguably more sophisticated source, BLACK'S LAW DICTIONARY 1351 (10th ed. 2014), possession is defined as "the fact of having or holding property in one's power."   Applying the plain meaning of "in the possession of the United States" to these facts, I conclude that the Witness Two's records which the prosecution received from the BOP are in their "possession," and the strategic decision not to review the records does not relieve it of its obligations under the Act.[5]

In reaching this result, I am struck by the scope of the Jencks Act as described by the Supreme Court in *Goldberg v. United States*, 425 U.S. 94, 104, 96 S. Ct. 1338, 1345, (1976), where it held, citing both Senate and House Reports, that a "defendant on trial in a criminal prosecution is entitled to relevant and competent reports and statements in possession of the Government *touching* the events and activities as to which a Government witness has testified at the trial."  (emphasis added).  The witness' own words after arrest might certainly touch upon the subject of his testimony, and those words now reside in documents in the office of the prosecution.  Allowing the Government to circumvent its duty to disclose by not looking at the records would be inconsistent with both the letter and the spirit of the Act.[6]

Requiring the Government to examine records it acquired as part of this case and which it currently has in custody will not send the Government on a "fishing expedition" through files of unrelated cases or uninvolved agencies.  *Merlino*, 349 F.3d at 154.  Here, the government took possession of the  records in pursuit of its prosecution, and then thought better of it.  That change of heart does not alter the applicability of the Act.  Accordingly, an Order will be issued

---

[5] On that score, I would rule no differently even if the records were physically returned to the BOP at this point, as the prosecution's control over the records, for its own purposes, has been established.

[6] In the separate but related context of *Brady* disclosure, the Court of Appeals has expressed its disapproval of strategic myopia.  *See United States v, Perdomo,* 929 F.2d 967, 970–71 (3d Cir. 1991).

requiring the Government to examine Witness Two's records and turn over any Jencks materials at the appropriate time.

Somewhat paradoxically, such review will have implications for the Government's corresponding responsibilities under *Brady*. As noted above, the Government's obligation to disclose exculpatory materials extends only to information about which the Government has actual or constructive knowledge. By definition, whatever review is conducted for purposes of Jecnks Act production will provide the Government with such knowledge, and I am confident that it will disclose any information it is required to disclose.

It bears emphasis that this case involves a targeted request from defense counsel for readily identifiable information in the possession of the prosecution. Nothing in this memorandum should be interpreted to suggest that the Government has any affirmative obligation to seek out and preserve information from the BOP or any other agency of the United States. *Merlino* squarely holds to the contrary. Where, however, the Government takes possession of materials not out of an abundance of caution that they might perhaps be discoverable, as was the case in *Merlino*, but for purposes related to the aims of the prosecution, the requirements of the Jencks Act must be met.

_____ /s/ Gerald Austin McHugh
United States District Court Judge

8